NOTICE
Decision filed 07/07/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250250-U

NO. 5-25-0250

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| ELIZABETH HENDRICK, Individually, as co-Trustee of a separate trust created for the benefit of Elizabeth Hendrick upon the division of Trust B created under the Last Will and Testament of Robert J. Hendrick, Deceased, and as co-Trustee of a separate trust created for the benefit of Elizabeth Hendrick under the Last Will and Testament of Mary Lee Hendrick, Deceased; REBECCA ROWE, and HENDRICK DORMS, INC., | ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Champaign County. |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No. 23-LA-94 |
| ROBERTA HENDRICK, Individually, as co-Trustee of a separate trust created for the benefit of Elizabeth Hendrick upon the division of Trust B created under the Last Will and Testament of Robert J. Hendrick, Deceased, and as co-Trustee of a separate trust created for the benefit of Elizabeth Hendrick under the Last Will and Testament of Mary Lee Hendrick, Deceased; TERRELL WILLIAMS; ALEXANDRA KRUEGER; TIMOTHY KRUEGER; and EMILY HENDRICK, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants | ) ) | |
| (Elizabeth Hendrick, Individually, as co-Trustee of a separate trust created for the benefit of Elizabeth Hendrick upon the division of Trust B created under the Last Will and Testament of Robert J. Hendrick, Deceased, and as co-Trustee of a separate trust created for the benefit of Elizabeth Hendrick under the Last Will and Testament of Mary Lee Hendrick, Deceased, and Rebecca Rowe, Plaintiffs-Appellants; Roberta Hendrick, Individually, as co-Trustee of a separate trust created for the benefit of Elizabeth Hendrick upon the division of Trust B created | ) ) ) ) ) ) ) ) ) ) ) | |

under the Last Will and Testament of Robert J. Hendrick, )
Deceased, and as co-Trustee of a separate trust created for )
the benefit of Elizabeth Hendrick under the Last Will and )    Honorable
Testament of Mary Lee Hendrick, Deceased, Defendant- )    Jason M. Bohm,
Appellee). )    Judge, presiding.

---

JUSTICE McHANEY delivered the judgment of the court.
Justices Sholar and Bollinger concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Where the circuit court erred in granting the defendants' motion to dismiss count I of the plaintiffs' third amended complaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2022)), we reverse and remand.

¶ 2    Robert and Mary Lee Hendrick created wills containing nearly identical trusts. The corpus of both trusts currently consists of 40% of the outstanding shares of Hendrick Dorms, Inc. (Hendrick House). Prior to the deaths of the Hendricks, Robert and Mary Lee established estate plans with separate trusts. The trusts established a plan for their children to manage Hendrick House with the underlying goal to provide a stream of consistent income for their children—Elizabeth (Betsy), Roberta (Bobbie), and James (Jim).

¶ 3    Robert died in 1978 and Mary Lee died in 1984. Their surviving children were named as co-trustees over the assets in both trusts. Jim died in 2018, and thereafter, Betsy and Bobbie have served as co-trustees.

¶ 4    In late 2015, Bobbie was instrumental in having her husband Terrell Williams (Terrell) voted in as president of Hendrick House. Betsy contends that with Terrell at the helm, Hendrick House was no longer able to provide income to their families, commercial loans were in default, and property taxes went unpaid. In June 2024, Bobbie allegedly suggested that Hendrick House needed to be sold if loans could not be refinanced by October 31, 2024.

2

¶ 5      Betsy and her daughter, Rebecca Rowe (Becky), filed this lawsuit on July 7, 2023, against Bobbie, Terrell, and all other directors (Jim's surviving daughter and Bobbie's children) alleging that Bobbie breached her fiduciary duty, both as co-trustee of both trusts and as a director of Hendrick House. The complaint sought damages and an appointment of a receiver for Hendrick House.

¶ 6      The trial court granted Bobbie's motion to dismiss counts I, II, IV, V, and VI of the third amended complaint. Betsy and Becky then filed a motion asking the circuit court to dismiss count III of their amended complaint with prejudice, to enable an appeal. The court granted this motion on February 24, 2025.

¶ 7      On appeal, Betsy and Becky challenge the dismissal of count I of the third amended complaint—the count alleging that Bobbie breached her fiduciary duties as co-trustee of the two trusts. For the following reasons, we reverse and remand for further proceedings.

¶ 8                                  I. BACKGROUND

¶ 9      Hendrick House is a private dormitory on the University of Illinois campus that is owned and operated by a Delaware corporation formed in 1956—Hendrick Dorms, Inc. Robert and Mary Lee Hendrick founded, constructed, and managed the profitable operation of Hendrick House during their lifetimes.

¶ 10     When Robert died in 1978, he owned 207 shares of Hendrick House. When Mary Lee died in 1984, she owned an additional 131 shares. The total shares owned by Robert and Mary Lee—338 shares—constituted a majority of the 671 total outstanding shares. The remaining 333 shares were equally owned by Robert and Mary Lee's three children. The estate plans created by Robert and Mary Lee were designed to foster cooperation among their children in managing Hendrick House, and to create a steady income stream for the children and their descendants.

3

¶ 11    The wills of Robert and Mary Lee each contained a trust to hold the Hendrick House shares during the children's lives. Robert's estate plan provided that his 207 shares of Hendrick House stock would be allocated to his three children who were still alive on the date that both he and Mary Lee were deceased. Each designated beneficiary was to be paid annual income for his or her shares during the beneficiary's lifetime. Robert's trust directed that if a beneficiary died, his or her share would be distributed to that beneficiary's living descendants. In his will, Robert also provided that his three children must serve as co-trustees of his trust. Upon Jim's death in 2018, the remaining two children, Betsy and Bobbie, continued to serve as co-trustees. The only assets in Robert's trust are the 207 shares of Hendrick House.

¶ 12    Mary Lee's will was similarly structured in that it created her trust, and her 131 shares were to be allocated equally to Betsy, Bobbie, and Jim. Like Robert's trust, the net income was to be paid to each beneficiary, and the children were to serve as co-trustees. The will stated that any sale of Hendrick House "shall only be by unanimous agreement." Mary Lee's trust maintained its original 131 shares even though Jim had died because her will's terms require that shares remain "in trust" until disposition of the stock. The only assets in Mary's trust are the 131 shares of Henrick House.

¶ 13    All directors and officers of Hendrick House are family members. Betsy became the president of Hendrick House after both Robert and Mary Lee died and served in that capacity until 2016. In 2015, Hendrick House's board of directors was comprised of seven family members: Betsy, Bobbie, Jim, Betsy's daughter, Becky, Bobbie's daughter Alexandra Krueger, Bobbie's son Tim Krueger (Tim), and Jim's daughter, Emily Hendrick (Emily). Becky, who was hired in May 1998 as the general manager of Hendrick House, continued in that position and served as a corporate director until May 2017.

¶ 14   Betsy, Bobbie, and Jim originally served as co-trustees. The trusts' documents seemingly contemplate that the three children would continue as co-trustees because the documents require a majority vote if the three could not unanimously agree on an issue. With Jim's death, if Betsy and Bobbie could not agree, there was no possibility of a trustees' majority agreement. Although Emily is Jim's daughter, she cannot vote on an equal basis because of differences in the two trusts. Emily only owns the shares from Robert's trust, but Jim's shares in Mary Lee's trust must remain in that trust. Thus, Emily cannot vote her father's one-third share because of the difference in terms between the two trusts.

¶ 15   Changes in the management of Hendrick House began in October 2015 when Bobbie made a motion at a Hendrick House board meeting to remove the then-current Hendrick House president, Betsy, and replace her with Bobbie's husband, Terrell. The directors voted and approved the motion over the objections of Betsy and Becky. On August 1, 2016, Terrell became the Hendrick House president. Betsy and Becky allege that during the years Terrell managed Hendrick House there were multiple financial failings including erroneous anticipated profits statements, inaccurate financial information, failure to notify the board of anticipated losses, failure to pay property taxes, and loan defaults.

¶ 16   Busey Bank, Hendrick House's banking partner, reached out to Betsy in 2019 after the Hendrick House property taxes went unpaid. Busey Bank requested a meeting only with Betsy, and raised concerns about Terrell's management of Hendrick House, including his unexplained loan draw requests and Hendrick House reaching its borrowing limit. Busey Bank informed Betsy that it needed financial changes from the Hendrick House Board of Directors including imposition of a strict budget, daily monitoring of cash flow, and maintenance of financial transparency.

¶ 17    Betsy informed Bobbie of Busey Bank's financial requests. Thereafter, in November 2019, Busey Bank held a meeting with Terrell to inform him that it had classified its lending relationship with Hendrick House as a "special asset" meaning that the Hendrick House loans were at risk of default. In 2020, Busey Bank notified Hendrick House that it was in default on all loans. Busey Bank sent Terrell a "term sheet" that required the signature of all members of the board of directors to obtain a forbearance. The term sheet was never returned to Busey Bank with the required signatures and, thus, Hendrick House did not receive a forbearance on the defaulted loans.

¶ 18    Hendrick House then entered into a loan agreement with a new lender, Pangea. The terms of the loan agreement provided that Hendrick House assets would need to be transferred into a "bankruptcy remote" entity, while other outstanding loans remained in default. Terrell explained to the board of directors that Pangea wanted Hendrick House transferred into a new limited liability corporation which would create a "liability reduction for Hendrick Dorms" and "all of the owners."

¶ 19    In 2024, Hendrick House's lender changed again to Heartland Bank. In June 2024, Bobbie introduced a resolution to the Hendrick House Board of Directors proposing that the board take immediate action because Heartland Bank was intent on foreclosing on the outstanding loans unless Hendrick House refinanced the loans or found a buyer by October 31, 2024. Bobbie then listed Hendrick House for sale through a real estate investment firm located in Chicago and allegedly had negotiations with the University of Illinois about the university purchasing the property.

¶ 20    Procedurally, Betsy and Becky filed this lawsuit on July 7, 2023, alleging that Terrell and all other Hendrick House directors breached their fiduciary duties, and sought damages and the appointment of a receiver for Hendrick House. The defendants filed a motion to dismiss. In response, Betsy and Becky filed a motion for leave to file a first amended complaint, but this first

amended version was never formerly filed, and the circuit court dismissed the initial complaint on January 17, 2024. Betsy and Becky then filed a second amended complaint on February 7, 2024, adding a derivative claim on behalf of Hendrick House for breach of fiduciary duties to the corporation. The defendants again filed a motion to dismiss, and the circuit court granted that motion on July 1, 2024. Betsy and Becky then filed a third amended complaint on July 29, 2024, containing six counts. On January 22, 2025, the circuit court specifically dismissed counts I, II, IV, V, and VI with prejudice, finding that any further amendments would be futile. The court noted that with each version of the complaint, Betsy and Becky never added to or modified the allegations to state a viable cause of action in these five counts. However, the court granted the plaintiffs leave to replead count III, which involved claims against Terrell. Betsy and Becky then filed a motion to dismiss count III, with prejudice to provide a jurisdictional right to appeal. The court granted that motion on February 24, 2025.

¶ 21    The plaintiffs only appeal the circuit court's dismissal of count I—that Bobbie breached her fiduciary duties as co-trustee of the trusts holding corporate shares. Count I of the third amended complaint alleges that Bobbie breached her duty of loyalty owed to Betsy and Becky by failing to administer the trust exclusively in their interests as beneficiaries; that she breached her duty of impartiality in that she administered the trusts "in a manner that elevate[d] the interest of some beneficiaries over others"; that she breached her duty of prudent administration in that she failed to exercise due care, skill, and caution in connection with adherence to the trusts' express terms and in the exercise of her other fiduciary duties; and that she failed to administer the trusts in good faith, in accordance with the trusts' express terms and purposes, and in accordance with the Illinois Trust Code.

7

¶ 23     On appeal, Betsy and Becky contend that the circuit court erred in dismissing count I of their third amended complaint for failure to state a cause of action under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2022)).

¶ 24     We first note that our Illinois Supreme Court has repeatedly stated "that Illinois is a fact-pleading jurisdiction." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). Notice to the defendants, without more, is insufficient. *Norabuena v. Medtronic, Inc.*, 2017 IL App (1st) 162928, ¶ 37 (citing *Marshall* , 222 Ill. 2d at 429-30). "[T]he plaintiff must allege facts 'sufficient to bring a claim within a legally recognized cause of action [citation], not simply conclusions.' " *Id.* (quoting *Marshall*, 222 Ill. 2d at 429-30). "A section 2-615 motion to dismiss challenges the legal sufficiency of the complaint based upon defects apparent on its face." *O'Malley v. Adams*, 2023 IL App (5th) 210381, ¶ 32 (citing *Marshall*, 222 Ill. 2d at 429). "In ruling on a section 2-615 motion, the trial court considers whether the factual allegations in the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a claim upon which relief can be granted." *Id.*

¶ 25     The plaintiff is not required to set forth all supportive evidence in the complaint to survive a dismissal motion under section 2-615. *Blevins v. Marcheschi*, 2018 IL App (2d) 170340, ¶ 29. The plaintiff only needs to allege the ultimate facts that support his or her cause of action. *Johnson v. Matrix Financial Services Corp.*, 354 Ill. App. 3d 684, 696 (2004). "A section 2-615 motion to dismiss admits all well-pleaded facts and all reasonable inferences drawn therefrom." *O'Malley*, 2023 IL App (5th) 210381, ¶ 32 (citing *Marshall*, 222 Ill. 2d at 429). A circuit court should not dismiss a complaint pursuant to section 2-615 "unless it is clearly apparent that no set of facts can be proven that will entitle the plaintiff to relief." *Id.* We consider an order granting a section 2-615

motion *de novo*. *Id.* "Under this standard, the appellate court reviews the trial court's judgment, not its rationale, and it may affirm the judgment on any basis supported by the record, regardless of the trial court's reasoning." *Id.* (citing *D'Attomo v. Baumbeck*, 2015 IL App (2d) 140865, ¶ 30).

¶ 26    At issue is whether Betsy and Becky raised a viable cause of action that Bobbie breached her fiduciary obligations. "To succeed on a breach of fiduciary duty claim, a plaintiff must plead and prove (1) a fiduciary duty was owed by the defendant, (2) the defendant breached its fiduciary duty, (3) the plaintiff suffered damages, and (4) the defendant's breach of fiduciary duty proximately caused those damages." *Grove v. Morton Community Bank*, 2022 IL App (3d) 210177, ¶ 37 (citing *Gearhart v. Gearhart*, 2020 IL App (1st) 190042, ¶ 144, citing *Herlehy v. Marie V. Bistersky Trust*, 407 Ill. App. 3d 878, 896 (2010)). The determination of whether a defendant breached its fiduciary duty raises a factual question. *Indeck Energy Services, Inc. v. DePodesta*, 2021 IL 125733, ¶ 56 (citing *Thompson v. Gordon*, 241 Ill. 2d 428, 438-39 (2011)). Betsy and Becky break the allegations that Bobbie breached her fiduciary duties into four categories: the duty of loyalty, the duty of impartiality, the duty of prudent administration, and administration of the trusts in good faith.

¶ 27                              A. Duty of Loyalty

¶ 28    Section 802(b)(1) of the Illinois Trust Code addresses the duty of loyalty and states: "A sale, encumbrance, or other transaction involving the investment or management of trust property is presumed to be affected by a conflict between personal and fiduciary interests if it is entered into by the trustee with: (1) the trustee's spouse ***." 760 ILCS 3/802(b)(1) (West 2022).

¶ 29    " 'The duty of loyalty owed by a trustee to a beneficiary in a trust relationship is more intense than in any other fiduciary relationship.' " *Janowiak v. Tiesi*, 402 Ill. App. 3d 997, 1009 (2010) (quoting *Prueter v. Bork*, 105 Ill. App. 3d 1003, 1009 (1981)). "[A]ll transactions arising

9

out of a fiduciary relationship *** are 'subject to the closest scrutiny.' " *Grove*, 2022 IL App (3d) 210177, ¶ 40 (quoting *McCormick v. McCormick*, 118 Ill. App. 3d 455, 466 (1983)). Moreover, in the existence of a fiduciary relationship, the fiduciary bears the burden to prove the fairness of transactions. *Prueter*, 105 Ill. App. 3d at 1005. In keeping with a trustee's fiduciary duty to a trust beneficiary, the trustee is required to " 'administer the trust in good faith, in accordance with its purposes and the terms of the trust, and in accordance with [the Illinois Trust] Code.' " *Grove*, 2022 IL App (3d) 210177, ¶ 38 (quoting 760 ILCS 3/801 (West 2020)).

¶ 30    As Bobbie's husband, Terrell, was voted in as the president of Hendrick House, there is a presumption of a conflict between Bobbie's "personal and fiduciary interests ***." 760 ILCS 3/802(b)(1) (West 2022). To "rebut this presumption, the trustee must present clear and convincing evidence that [she] exercised good faith and did not betray the beneficiary's confidence." *Grove*, 2022 IL App (3d) 210177, ¶ 41. More specifically, the trustee bears the burden of proof by clear and convincing evidence "that the transaction was fair, equitable, and not the result of undue influence." *Id.*

¶ 31    We are reminded that Illinois is a fact-pleading jurisdiction requiring a plaintiff to sufficiently allege facts that bring the claim "within the scope of the cause of action asserted." *Turner v. Memorial Medical Center*, 233 Ill. 2d 494, 499 (2009). Betsy and Becky alleged that Bobbie violated her duty of loyalty as follows:

> "managing the trust estate primarily for the benefit of herself and her husband, by ensuring her husband's continued employment as the highest compensated officer of the company even after he demonstrated complete incompetence for the job, [and] allowing the value of the trust estate to be eroded and all income for the benefit of the trust beneficiaries to disappear through his incompetence and mismanagement."

10

We acknowledge that the allegations made in the third amended complaint are essentially identical to allegations pled in earlier versions of the complaint, and this was a stated reason for the circuit court's dismissal. However, we conclude that count I of the third amended complaint sufficiently alleges the presumptive conflict of interest regarding Bobbie's duty of loyalty.

¶ 32    Statutory law presumes a conflict if a trustee engages in a transaction involving the management of trust property with his or her spouse. 760 ILCS 3/802(b)(1) (West 2022). Betsy and Becky allege that Bobbie's duty of loyalty requires her to "elevate" their interests over her own and over any third party connected to Bobbie, like her husband, Terrell. As alleged, Bobbie actively sought to undermine her sister's position as president of the Hendrick House Board of Directors, by lobbying her children and Jim's daughter, Emily, to vote Betsy out and install Terrell. Given that presumption of a conflict of interest, coupled with the additional facts alleged, we find that the allegations made by Betsy and Becky provide sufficient "ultimate facts" to state a claim. *Johnson*, 354 Ill. App. 3d at 696. Accordingly, we find that the circuit court erred in dismissing count I as it set forth a cause of action for breach of the fiduciary duty of loyalty.

¶ 33                                    B. Duty of Impartiality

¶ 34    Betsy and Becky next allege that Bobbie violated her duty of impartiality by elevating the interests of herself and her children over the interests of Betsy and Becky. Betsy and Becky state that Bobbie cannot administer the two trusts "for her benefit in a manner that elevates the interest of some beneficiaries over others" and allege that Bobbie managed the trust estate by ensuring that her family receives compensation. As a result, Betsy and Becky allege that Hendrick House is now operated at a loss with no income available for shareholder distribution.

¶ 35    Section 803 of the Illinois Trust Code provides:

11

"If a trust has 2 or more beneficiaries, the trustee shall act impartially in investing, managing, and distributing the trust property giving due regard to the beneficiaries['] respective interests. The trustee must treat the beneficiaries equitably in light of the purposes and terms of the trust, including any manifestation of an intention to favor one or more beneficiaries." 760 ILCS 3/803 (West 2022).

¶ 36     We find that the complaint states sufficient specific facts about the duty of impartiality— when taken as true and paired with reasonable inferences—to preclude dismissal at this stage. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31 (citing *Doe v. Chicago Board of Education*, 213 Ill. 2d 19, 23-24 (2004); *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009)). Betsy and Becky pled facts concerning Bobbie's role in installing her husband as board president and that her actions financially benefited her immediate family. They allege that Bobbie, Terrell, and Bobbie's children "all receive compensation and business experience which is funded with borrowed money due to the continuous operating losses of the company." Accepting these well-pleaded facts as true, along with the reasonable inferences they support, we conclude that the court erred in dismissing count I as it sets forth a cause of action for breach of the fiduciary duty of impartiality. *Id.*

¶ 37                          C. Duty of Prudent Administration

¶ 38     Betsy and Becky also allege that Bobbie violated her duty of prudent administration. Section 804 of the Illinois Trust Code states: "A trustee shall administer the trust as a prudent person would, by considering the purposes, terms, distribution requirements, and other circumstances of the trust. In satisfying this standard, the trustee shall exercise reasonable care, skill, and caution." 760 ILCS 3/804 (West 2022).

¶ 39    In support of this claim that Bobbie violated her duty of prudent administration, Betsy and Becky allege that Bobbie was required to "exercise due care, skill, and caution in connection with her adherence to the express terms of the trust and the exercise of her other fiduciary duties." More specifically, Betsy and Becky allege that Bobbie failed to vest Hendrick House with a competent management team; failed to question financial reports and projections provided by Terrell which "would have alerted a person of reasonable prudence of his incompetence"; and failed to take any action to improve management of Hendrick House despite years of operational loss and mismanagement.

¶ 40    We conclude that Betsy and Becky alleged specific facts outlining Bobbie's failings in prudently administering the express terms of the trusts in exercising her fiduciary duties. Taking these facts pleaded by Betsy and Becky as true, and accepting the supportive reasonable inferences, we find that the circuit court erred in dismissing count I as it set forth a cause of action for breach of the fiduciary duty of prudent administration. *Patrick Engineering, Inc.*, 2012 IL 113148, ¶ 31 (citing *Doe*, 213 Ill. 2d at 23-24; *Pooh-Bah Enterprises, Inc.*, 232 Ill. 2d at 473).

¶ 41                    D. Duty to Administer Trust in Good Faith

¶ 42    Betsy and Becky also allege that Bobbie had a duty to administer the trust in good faith and in accordance with the trusts' express terms and their purposes. We turn to the fiduciary duty a trustee owes to the trust beneficiaries. See *Gearhart*, 2020 IL App (1st) 190042, ¶ 144. A trustee is required to "administer the trust in good faith, in accordance with its purposes and the terms of the trust, and in accordance with this [Illinois Trust] Code." 760 ILCS 3/801 (West 2022).

¶ 43    Betsy and Becky pled that Bobbie "diverted all resourses [*sic*], including funds raised by borrowing against the trust assets, to her own household and to the exclusion of all other trust beneficiaries"; she "wasted the corporation by engaging in transactions between the trust property

13

and her husband to benefit her own household while depriving the company of a competent management team"; she disregarded the trusts' purposes to ensure that each sibling's family had equal participation in the management and stewardship of Hendrick House; and she took exclusive management authority over the business by terminating Becky's management involvement, packing the board with her own children, conspiring with Jim's daughter, Emily, to foreclose Betsy from participation in management, and through her husband, limited the information available to shareholders to keep them from any meaningful role in the management or direction of the business.

¶ 44   "In ruling on a section 2-615 motion, the trial court considers whether the factual allegations in the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a claim upon which relief can be granted." *O'Malley*, 2023 IL App (5th) 210381, ¶ 32. "A section 2-615 motion to dismiss admits all well-pleaded facts and all reasonable inferences drawn therefrom." *Id.* Although the complaint allegations are somewhat general in nature, the allegations contain sufficient facts regarding Bobbie's duty to administer the trusts in good faith, thus precluding the dismissal of count I on this issue. *Id.* (citing *Marshall*, 222 Ill. 2d at 429).

¶ 45                                III. CONCLUSION

¶ 46   For the above reasons, we reverse the order of the Champaign County circuit court dismissing count I of the plaintiffs' third amended complaint and remand for further proceedings.


¶ 47   Reversed and remanded.